UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID R. RUBY, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>HELEN E. RYAN and JOHN J. RYAN, JR.,<br><br>Defendants. | Case No.: 15cv2537-GPC (BLM)<br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR THIRD PARTY CLAIM OF EXEMPTION**<br><br>**[ECF No. 39]** |

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Mykal Ryan's motion for third-party claim of exemption be **GRANTED** and his request for refund of the garnishment fee be **DENIED**.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2013, the United States District Court, Eastern District of Virginia entered a default judgment in favor of David Ruby, Chapter 7 Trustee, in the amount of $34,093.08 against Helen Ryan and John Ryan, Jr. jointly and severally, and in the amount of $318,431.23 against Helen E. Ryan, individually.  ECF Nos. 1 at 1-2; 2 at 1.  On September 29, 2015, and October 2, 2015, David Ruby ("Judgment Creditor") requested this Court enter abstracts of judgment, which the Court subsequently entered against Helen Ryan and John Ryan ("Judgment

Debtors"). See ECF Nos. 4-5, 8-9. On September 29, 2015, and October 2, 2015, Judgment Creditor filed writs of execution against Judgment Debtor Helen Ryan. See ECF Nos. 3 & 7.

On October 28, 2015, Judgment Creditor filed a notice of levy for "[a]ll bank accounts owned by Helen E. Ryan and/or John J. Ryan, Jr." ECF No. 17, Exh. 1 at 2. On November 4, 2015, U.S. Bank levied $99,622.73, and an additional $100.00 as a garnishment fee, from the U.S. Bank account ending in 4226 ("U.S. Bank account x4226") held in the name of Helen Ryan. See ECF No. 27, Exh. 4 at 50. On November 5, 2015, Helen Ryan challenged the validity of the levy, claiming the funds in U.S. Bank account x4226 belonged to her son, Mykal Ryan. See ECF No. 17.

After this Court issued a Report and Recommendation finding that Helen Ryan could not assert a third-party claim for Mykal Ryan, that Mykal had not submitted a Claim of Exemption on his own behalf, and that Mykal had not established that all of the levied funds in U.S. Bank account x 4226 belonged to him, Mykal Ryan submitted a third-party claim of exemption alleging that "all the money deposited to Helen E. Ryan's U.S. Bank Account (x4226) belong[s] to [him]." See ECF Nos. 33 & 39; see also ECF No. 39, Exh. 15 at 35. On May 27, 2016, Mr. Ryan filed a "Motion for Third Party Claim of Exemption Pursuant to CCP Sections 720.310, 688.030, 720.110, 720.120 and 720.130." ECF No. 39 ("Mot."). On June 13, 2016, Judgment Creditor opposed the motion [ECF No. 44 ("Oppo.")], and on June 20, 2016, Mr. Ryan filed a reply in support of his motion [ECF No. 48 ("Reply")].

## **LEGAL STANDARD**

California Code of Civil Procedure provides a procedure for third parties, who are not judgment debtors or creditors, to make claims of exemption for property levied by a writ of execution. See CCP §§ 688.030, 720.110. A third party who claims ownership of levied property

must file a claim with "the state department or agency that issued the notice of levy." See CCP § 688.030(b)(1). The third-party claim must be executed under oath and must contain the following information:

    (1)    The name of the third person and an address in this state where service by mail may be made on the third person.

    (2)    A description of the property in which an interest is claimed.

    (3)    A description of the interest claimed, including a statement of the facts upon which the claim is based.

    (4)    An estimate of the market value of the interest claimed.

CCP § 720.130(a). Further, "[a] copy of any writing upon which the claim is based shall be attached to the third-party claim." CCP § 720.130(b). A third-party claim must be filed with the levying officer before the officer sells the property, delivers possession of the property to the creditor, or pays proceeds of collection to the creditor. CCP § 720.120. The creditor opposing a third-party claim must object within ten days after service of the claim. CCP § 720.140(b).

Either the creditor or the third party "may petition the court for a hearing to determine the validity of the third-party claim and the proper disposition of the property that is the subject of the claim." CCP § 720.310(a). The third party bears the burden of proof at a hearing and can meet its burden by introducing evidence that it owns the levied property. See CCP § 720.360; Whitehouse v. Six Corp., 40 Cal. App. 4th 527, 530, 535 (Ct. App. 1995).

After the third party claimant presents evidence that it owns the property in question, the burden of proof shifts to the judgment creditor to establish that the third party's claim is invalid or that the judgment creditor's claim is superior. See Oxford St. Prop., LLC v. Rehab. Assoc., LLC, 141 Cal. Rptr. 3d 704, 712 (Ct. App. 2012) (citation omitted). As a general rule, "a judgment or levy reaches only the interest of the debtor in the property because a judgment

1  creditor can acquire no greater right in the property levied upon than that of its judgment
2  debtor." See Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc., 37 Cal. Rptr. 2d 552,
3  556 (Ct. App. 1995); see also Oxford St. Prop., LLC, 141 Cal. Rptr. 3d at 712 ("A security interest
4  attaches only to whatever rights the debtor has in the collateral.").

## DISCUSSION

Mr. Ryan claims the levied U.S. Bank account x4226 funds are exempt because he is not the judgment debtor and all of the funds in the account belong to him. Mot. at 1-2, Exh. 15 at 35. Mr. Ryan acknowledges that the account was opened by and held in the name of his mother, Judgment Debtor Helen Ryan, but claims that it was done that way due to the symptoms associated with his Post Traumatic Stress Disorder ("PTSD") diagnosis, and maintains that the funds in the account are exempt from levy because they were his social security, veterans', and federal retirement benefits. See Mot. at 1-2, 5-7; id., Exh. 15 at 35; ECF No. 39-1, Declaration of Mykal Ryan ("Mykal Ryan Decl.") at 3-6.

Judgment Creditor argues in his opposition that the funds in U.S. Bank account x4226 are not Mr. Ryan's property and are not exempt from levy. Oppo. at 1-2. Alternatively, Judgment Creditor contends that Mr. Ryan is judicially estopped from claiming ownership of the funds in the account because Mr. Ryan failed to claim the account in his bankruptcy schedules during his bankruptcy proceedings. See id. at 12-13. Judgment Creditor contends that Mr. Ryan has engaged in a scheme of fraudulent transfers to avoid his creditors' claims, that Mr. Ryan is dishonest, his "testimony is not to be trusted," and that the Court should find that the funds no longer belong to Mr. Ryan and are subject to levy. See id. at 7-11.

In his reply, Mr. Ryan reiterates that the funds in U.S. Bank account x4226 belong to him and are exempt because they are his social security, veterans', and military retirement benefits.

See Reply at 1. Mr. Ryan further argues that the placement of the funds in a bank account opened in his mother's name did not divest the funds of their exempt status because social security and veterans' benefits are exempt regardless of where such funds are deposited. Id. at 2, 5-7.

### I. Mr. Ryan's Third-Party Claim of Exemption

Mr. Ryan asserts in his claim of exemption that he is not a judgment debtor, that "all deposits to Helen Ryan's acc[ount] were federal benefits paid to [him]," and that "[a]ll of the money deposited to Helen E. Ryan's U.S. Bank Account (x4226) belonged to [him]." Mot., Exh. 15 at 35. In his declaration, Mr. Ryan states that from August 1987 through January 1997, he was employed as a federal civilian propulsion engineer at the Army Research Lab, that he subsequently worked as a federal civilian aerospace engineer at an Army Joint Special Operations Command, and that he served two tours of duty in Iraq as an Army reservist. Mykal Ryan Decl. at 2. Mr. Ryan declares that the funds at issue always belonged to him and were never intended to belong to or be used by his mother. Id. at 3. Mr. Ryan explains that in August 2005, he was diagnosed with PTSD, which rendered him "100% disabled," that he was also diagnosed with depression, and that he retired "due to disability" on March 14, 2008. Id. at 2. Mr. Ryan further declares that:

> [a]round January 11, 2008, just prior to my retirement and around the time I was diagnosed with the PTSD and the depression, when my symptoms were at their worst, I had my mother open a bank account at San Diego National Bank ("SDNB")[1] under her name to make sure in the event of my incapacity, I had a place to deposit my funds and so my mother would be able to assist me with paying bills or simply just helping me purchase life's necessities. . . . . I believe

---

[1] Mr. Ryan declares that in late 2009 or early 2010, SDNB was sold to U.S. Bank, and that the SDNB account x5422 was changed to U.S. Bank account x4226, the account from which the funds at issue were levied. Id. at 3. Judgment Creditor confirms this statement. Oppo. at 13.

> that my fear of the unknown and the stress of the diagnosis itself was the reason the account was opened in my mother's name only.  That said, it **was never our intent that the funds belonged to my mother or that they were going to be used by her.  The funds in that account have always only belonged to me**.

Id. at 3 (emphasis in original).  Mr. Ryan maintains that the funds at issue are exempt from levy because they "can be traced directly to [his] social security benefits, retirement benefits or VA benefits." See id. at 3-6; Mot. at 5; id., Exhs. 2-14.

Helen Ryan avers in her declaration that U.S. Bank account x4226 contains Mr. Ryan's federal deposits, and that Mr. Ryan served two tours in Iraq and is "100% disabled." ECF No. 41 ("Helen Ryan Decl.") at 1-2.  Ms. Ryan states that she "ha[s] been with [Mr. Ryan] when his PTSD flares up and for periods of time it can debilitate [Mr. Ryan] to the point that he completely withdraws and fails to meet his responsibilities or he takes actions which seem to make no sense and even harm his interests." Id. at 2.  Ms. Ryan explains that she opened and maintained the account at issue in her name:

> because we both fear that there could be a time when Mykal's PTSD flares up to the point where he cannot handle his own life or finances, many years ago, I opened US Bank Account ending in x4226 under my name so that Mykal would have a place to deposit his own funds and so that I could assist Mykal with paying bills or meeting his necessities of life in the event he became incapacitated as he sometimes does because of his illness.  It was never our intent that the funds belonged to, or were going to be used by, me.

Id.  Ms. Ryan also states that "the only funds deposited to x4226, save one which was a Morgan Stanley dividend, were Mykal's" and explains that her Morgan Stanley dividend was deposited in the account in September 2012 as a result of a banking error.[2]  See id. (citing Exh. 5).

---

[2]  The U.S. Bank statements confirm a deposit from "MORG STAN DIV" in the amount of $1,098.20 on September 5, 2012.  Mot., Exh. 5 at 73.  Mr. Ryan references the deposit in his declaration stating that it "was from [his] mother's Morgan Stanley retirement account," states

6

Mr. Ryan's claim of exemption form was executed under oath and contains the following information: (1) Mr. Ryan's name and address in California where service by mail may be made, (2) a description of U.S. Bank account x4226, and (3) a list of the statutory codes pursuant to which Mr. Ryan claims his exemption[3] and a statement that "all deposits paid to Helen Ryan's acct. were federal benefits paid to [Mr. Ryan]." Mot., Exh. 15 at 35. As such, Mr. Ryan's claim satisfies the first three elements of a third-party claim of exemption. See CCP § 720.130. With respect to the fourth element, an estimate of the market value of the interest claimed, Mr. Ryan states in his claim that "[a]ll of the money" in U.S. Bank account x4226 belong to him. Mot., Exh. 15 at 35. The letter accompanying the claim, which is addressed to the Levying Officer, states that the amount at issue is "$99,622.73, plus a $100.00 garnishing fee." Id. at 33. Because the letter appears to be a part of Mr. Ryan's claim of exemption packet, the Court finds that Mr. Ryan's claim sufficiently estimates the market value of the interest claimed and satisfies the fourth element of a third-party claim of exemption. See Mot., Exh. 15; see also CCP § 720.130. This conclusion is further bolstered by Mr. Ryan's statement in his declaration filed in support of his motion for third party claim of exemption that $99,622.73 levied from U.S. Bank account x4226 is exempt from levy, and that he is seeking reimbursement of the $100.00 garnishment fee. Mykal Ryan Decl. at 2.

---

that the deposit "may not be . . . exempt from levy," but contends that the "deposit no longer exists in the account." Mykal Ryan Decl. at 5.

[3] Specifically, Mykal Ryan cites the following provisions in support of his claim of exemption: CCP §§ 704.080, 704.110, 704.115, 704.130, 10 U.S.C. §§ 1440 & 1450, 42 U.S.C. § 407, and 38 U.S.C. § 5301. Id.

Judgment Creditor does not challenge the sufficiency of the third-party claim of exemption form submitted by Mr. Ryan, but argues that by placing the funds at issue in a bank account under his mother's name, Mr. Ryan "transferred" the funds to his mother, and that "the funds are . . . no longer exempt." Oppo. at 12-13. Mr. Ryan replies that it is irrelevant where his social security and veterans' benefit funds are deposited because such directly-deposited benefits are exempt. See Reply at 5-7 (citing CCP § 704.080 and Kilker v. Stillman, 182 Cal. Rptr. 3d 712, 720 (Ct. App. 2015)); see also Mykal Ryan Decl.; Kilker, 182 Cal. Rptr. 3d at 720 (providing that "[s]ection 704.080, subdivision (b) provides an *automatic* exemption . . . for statutorily specified amounts contained in deposit accounts into which the government has directly deposited Social Security payments.").

To support his claim, Mr. Ryan provides detailed, unreacted bank records for U.S. bank account x4226 and documents from various federal agencies. See Mot., Exhs. 2-13. Mr. Ryan's bank statements, a letter from the Social Security Administration, and a Social Security Benefit Statement, establish that at least $98,897 in social security benefits given to Mr. Ryan were directly deposited into U.S. Bank account x4226 during the relevant time period. See Mot., Exhs. 2-10; see also Mykal Ryan Decl. at 5. Mr. Ryan's bank statements and a letter from the Department of Veterans Affairs further show that between September 1, 2012 and the date of the levy, at least $72,262 of his veterans' benefits were directly deposited into U.S. Bank account x4226. See Mot., Exhs. 4-9, 11; see also Mykal Ryan Decl. at 5-6. As such, Mr. Ryan has established that over $171,159 in social security and veterans' benefit payments to him were directly deposited into U.S. Bank account x4226. See Mot., Exhs. 2-11; Mykal Ryan Decl. at 4-

6. Such funds are exempt from levy and far exceed the amount of the levied funds at issue.[4] See 42 U.S.C. § 407(a) (providing that social security benefits are not "subject to execution, levy, attachment, garnishment or other legal process."); 38 U.S.C. § 5301(a)(1) (providing that veterans' benefit funds "made to, or on account of, a beneficiary shall be exempt from . . . the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.").

Because Mr. Ryan presented evidence that he owns the levied funds in U.S. Bank account x4226, the burden of proof shifts to Judgment Creditor to establish that Mr. Ryan's claim is invalid or that Judgment Creditor's claim is superior. Oxford St. Prop., LLC, 141 Cal. Rptr. 3d at 712. Judgment Creditor attempts to undermine Mr. Ryan's ownership claim in the funds at issue by asserting that Mr. Ryan is dishonest and that he should be judicially estopped from claiming ownership of the funds in U.S. Bank account x4226. See Oppo. at 7-13.

## II. Equitable Considerations

Judgment Creditor argues that Mr. Ryan is judicially estopped from claiming ownership of the funds in U.S. Bank account x4226 because Mr. Ryan did not claim ownership of the

---

[4] Judgment Creditor does not challenge any of the withdrawals from the account at issue. See Oppo. Nonetheless, the Court has reviewed them. Mr. Ryan's bank statements establish that the withdrawals from the account were sent to Bank of America, AT&T Uverse, Time Warner Cable, State Farm Insurance, American Express, Costco membership, Auto Club of Southern California, Direct TV, City of San Diego, United Concordia, Triwest Health, and public storage. See Mot., Exhs. 2-9. With regard to the large recurring transfers to Bank of America described as "Payment Check" or "ONLINE PMT," Mr. Ryan represents in his declaration that these payments were spent on gardening, keeping up the yard and his home, charitable contributions, mortgage and credit card bill payments, taxes, home and car insurance, cable and internet bills, and property upkeep and vehicle maintenance. See Mykal Ryan Decl. at 7. Based upon the bank statements, Mr. Ryan's declaration, and Judgment Creditor's lack of challenge, the Court finds that the withdrawals were made for Mr. Ryan's benefit.

account when he filed for bankruptcy on July 16, 2008.  Id.  Judgment Creditor further alleges that Mr. Ryan is "dishonest and his testimony is not to be trusted," and that Judgment Debtor Helen Ryan is complicit in Mr. Ryan's "scheme to hinder and defraud" creditors.  See id. at 7-12.  Judgment Creditor filed a "Request for Judicial Notice" [ECF No. 44-3 at 1-3 ("Request")],[5] and provides Mr. Ryan's bankruptcy schedules, the "Memorandum Opinion" from Mr. Ryan's bankruptcy proceedings, and exhibits describing multiple legal actions against Judgment Debtors.  See Request, Exhs. 1, 5-8.

Mr. Ryan denies that he intentionally engaged in any improper conduct and argues that his alleged involvement in prior bad acts does not entitle Judgment Creditor to the funds in U.S. Bank account x4226 because bad faith and judicial estoppel are not listed exceptions to exemptions set forth in 11 U.S.C. § 522.  See Reply at 2-4 (citing Law v. Siegel, 134 S.Ct. 1188, 1194, 1196-97 (2014)[6]).  Mr. Ryan also asserts that judicial estoppel is an extraordinary remedy,

---

[5] Judgment Creditor asks the Court to judicially notice several filings in the United States Bankruptcy Court for the Eastern District of Virginia; the Superior Court of California, County of Alameda; the Superior Court of Arizona, County of Maricopa; and the United States District Court for the Eastern District of Virginia.  Request at 1-3.  Mr. Ryan does not oppose the request.  See Reply.  Federal Rule of Evidence 201 provides that a court may take judicial notice of facts "not subject to a reasonable dispute" if they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  In applying this rule, courts "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'"  Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002)).  Because the documents at issue are court records, the Court **GRANTS** Judgment Creditor's unopposed request to take judicial notice of the documents lodged as ECF No. 44-3, Exhs. 1-8 ("Request, Exhs. 1-8").

[6] In Siegel, the Supreme Court held that a bankruptcy court lacks authority under its inherent powers of 11 U.S.C. § 105(a) to surcharge an allowed exemption for payment of administrative expenses, even where the debtor claimed the exemption through fraud.  Id., 134 S.Ct. at 1195.

which should only be applied when a party's alleged inconsistent behavior will result in a miscarriage of justice, and Judgment Creditor has not established the key factors required for application of that doctrine. Oppo. at 3-4.

Judicial estoppel is an equitable doctrine used to protect the integrity of the judicial process. New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001). California courts consider the following factors in determining whether to apply judicial estoppel: "(1) [whether] the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." Jogani v. Jogani, 45 Cal. Rptr. 3d 792, 797 (Ct. App. 2006) (citing Aguilar v. Lerner, 12 Cal. Rptr. 3d 287, 295 (2004) (internal quotation omitted)). Because "judicial estoppel is an equitable doctrine, . . . its application, even where all necessary elements are present, is discretionary,"

---

The Supreme Court determined that 11 U.S.C. § 522 "sets forth a number of carefully calibrated exceptions and limitations, some of which relate to the debtor's misconduct." Id. at 1196. The Court reasoned that "[t]he Code's meticulous—not to say mind-numbingly detailed— enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." Id. The Supreme Court then concluded that the Code does not confer "a general, equitable power in bankruptcy courts to deny exemptions based on a debtor's bad faith conduct" or "the debtor's fraudulent concealment of [an] asset alleged to be exempt." Id.

This Court notes that the exemptions considered by the Supreme Court in Siegel concern exemptions asserted under the Bankruptcy Code. In this case, Mr. Ryan is not asserting exemptions under the Bankruptcy Code, but under California law and several federal statutes governing federal benefits. See Mot., Exh. 15 at 35. The Supreme Court in Siegel also noted that "when a debtor claims a *state-created* exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." Siegel, 134 S.Ct. at 1196-97 (emphasis in original) (citation omitted). Accordingly, the Court will consider the merits of Judgment Creditor's equitable arguments.

and "should be applied with caution and limited to egregious circumstances." <u>Jogani</u>, 45 Cal. Rptr. 3d at 798 (citations omitted).

### a. Whether Mr. Ryan Took Two Inconsistent Positions

Judgment Creditor alleges that Mr. Ryan took two inconsistent positions because he failed to disclose the account at issue in his Schedule B bankruptcy filing. <u>See</u> Oppo. at 12-13 (citing Request, Exh. 8 at 117). Mr. Ryan acknowledges that he did not list the account in his bankruptcy schedules, but contends that he did not list *any* accounts, and thus, did not assert a prior or inconsistent position. Reply at 4.

On January 11, 2008, Judgment Debtor Helen Ryan opened the account at issue under her name but allegedly for the benefit of Mr. Ryan. <u>See</u> Mykal Ryan Decl.; Helen Ryan Decl. On July 16, 2008, Mykal Ryan filed for bankruptcy and did not list the bank account at issue as his property. <u>See</u> Oppo. at 13; <u>see also</u> Request, Exhs. 1 at 6; 8. Specifically, in Schedule B, next to category "[c]hecking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives," Mr. Ryan indicated "None." Request, Exh. 8 at 117. Because Mr. Ryan failed to list the bank account at issue and his ownership of all/some of the funds in the account as an asset in his bankruptcy proceeding, and is now claiming ownership of the funds in the bank account in this proceeding, Mr. Ryan has asserted inconsistent positions in two judicial proceedings. <u>See</u> <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 784 (9th Cir. 2001) (finding that a debtor asserted inconsistent positions when he failed to list claims as assets on bankruptcy schedules and sued on the same claims in a later proceeding). The Court therefore finds that factors 1, 2 and 4 of the judicial estoppel doctrine

are present and weigh in favor of application of the doctrine. See Jogani, 45 Cal. Rptr. 3d at 797.

### b. Whether the Bankruptcy Court Accepted Mr. Ryan's Earlier Position

Mr. Ryan argues that the third factor is not satisfied because the bankruptcy court denied his petition and did not discharge his debts. See Reply at 4; Jogani, 45 Cal. Rptr. 3d at 797. Courts have observed that this factor is particularly important in the determination of whether to apply the judicial estoppel doctrine:

> courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," . . . Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations,". . . , and thus poses little threat to judicial integrity.

New Hampshire, 532 U.S. at 750-51 (internal citations omitted); Jogani, 45 Cal. Rptr. 3d at 798-99 (same). Success in a prior bankruptcy proceeding has been found where the bankruptcy court relied on the party's first position to discharge or reorganize the party's debt. See Hamilton, 270 F.3d at 784 (finding judicial acceptance factor satisfied where the bankruptcy court discharged a debtor's debt; also noting that the bankruptcy court was not required to "actually discharge debts before the judicial acceptance prong may be satisfied," and that the "court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims" by, for example, lifting a stay based in part on the debtor's nondisclosure in its bankruptcy schedules or approving the debtor's plan of reorganization).

In this case, the United States Bankruptcy Court for the Eastern District of Virginia denied Mr. Ryan's petition for discharge of debt. See Request, Exh. 1 at 32. In reaching its decision, the court observed, *inter alia*, that Mr. Ryan's "statements in the Schedules [were] inaccurate

and that those inaccuracies were made knowingly." Id. at 29-30.  Because the bankruptcy court did not accept as true Mr. Ryan's statements in his bankruptcy schedules and denied his petition for discharge, the Court finds that Mr. Ryan was not successful in asserting his first position that the funds did not belong to him and therefore the third judicial estoppel factor is not satisfied. See Jogani, 45 Cal. Rptr. 3d at 799-800, 811 (concluding that a party did not successfully assert prior position where the party's prior inconsistent position during his debtor examination testimony was not adopted or accepted as true by the court).  Because success in the prior judicial proceeding involving the inconsistent statement is a critical component of the judicial estoppel doctrine, this factor weighs strongly against application of the doctrine.  See Zedner v. U.S., 547 U.S. 489, 505 (2006) (holding that the doctrine of judicial estoppel did not apply where petitioner did not "succee[d] in persuading" the district court to accept his earlier position, and where other judicial estoppel factors favored estoppel; concluding that the other factors "d[id] not predominate."); Jogani, 45 Cal. Rptr.3d at 798 (stating that "[t]he factor of success— whether the court in the earlier litigation adopted or accepted the prior position as true—is of particular importance.").

### c. Whether Mr. Ryan's First Position was Taken as a Result of Ignorance, Fraud or Mistake

Judgment Creditor alleges that Mr. Ryan's omission of the bank account at issue in his bankruptcy proceeding was designed to defraud his creditors.  See Oppo. at 7-12.  Mr. Ryan argues that the omission was inadvertent because his petition, including Schedule B, was filed in August 2008, around the time he was diagnosed with PTSD, and that his condition was nearly debilitating, he had suicidal thoughts, and he was receiving regular care from a psychiatrist.  See

Reply at 4. Mr. Ryan contends that "[i]t is hard to imagine anyone not being ignorant and or making mistakes when they are in such a debilitating state contemplating suicide." Id.

Mr. Ryan provides a supporting declaration from Dewleen G. Baker, M.D., a psychiatry professor at the University of California School of Medicine and the Director of Research and Neuroscience Unit at the Center of Excellence for Stress and Mental Health at the San Diego VA Health System. ECF No. 39-2, Declaration of Dewleen G. Baker ("Baker Decl."). Dr. Baker states that in 2008, he diagnosed Mr. Ryan with PTSD and depression, and that he has been treating Mr. Ryan's conditions for many years. Id. at 2. Dr. Baker further explains that "[i]nitially, the PTSD was very debilitating and Mr. Ryan had many suicidal thoughts among other serious problems and conditions." Id. Dr. Baker declares that Mr. Ryan's symptoms include panic attacks, feelings of being overwhelmed and unorganized, an inability to concentrate, feelings of aggression and combativeness, depression and desire to withdraw from others and society, and significant trust and paranoia issues. Id. Dr. Baker further opines that the symptoms:

> incapacitate [Mr. Ryan] and interfere with his plans and ability to function under normal stresses and especially under magnified stresses such as coping with accusations and court litigation. For example, . . . Mr. Ryan has sometimes failed to timely file court documents and/or has sometimes taken actions or failed to take any action which might appear irrational or legally unreasonable and might even prejudice his own interests.

Id. Dr. Baker concludes that Mr. Ryan's "behavior is entirely consistent with his illness and is the reason he continues to be in treatment and take medication." Id.

Mr. Ryan also provides a letter from Rukhsana Khan, M.D., a psychiatrist at the Department of Veterans Affairs at the VA Medical Center in Livermore, CA, dated March 22, 2007. Mot., Exh. 16 at 37-38. Dr. Khan states that she has treated Mr. Ryan since August 2005, that Mr. Ryan "reported multiple symptoms that adversely affected his day to day life," and that

those symptoms were "most likely a result of [Mr. Ryan's] military service in Iraq from April 2003 to November 2004." Id. at 37. Dr. Khan further states that Mr. Ryan's symptoms are "likely associated with long term exposure to the stresses of war," and that he suffers from PTSD "secondary to combat exposure." Id. Dr. Khan further contends that PTSD is a chronic condition, that treatment relieved some of Mr. Ryan's symptoms, that other symptoms have persisted, and that there is no "assurance that PTSD symptoms suffered by Mr. Ryan can be eliminated." Id.

In light of Dr. Baker's declaration and Dr. Khan's letter, the Court cannot conclude that Mr. Ryan's failure to claim ownership of U.S. Bank account x4226 in his bankruptcy filing was not a mistake committed as the result of his mental illness. Accordingly, this factor weighs against a finding of judicial estoppel. See Jogani, 45 Cal. Rptr. 3d at 797.

"'The gravamen of judicial estoppel is not privity, reliance, or prejudice [; but] the intentional assertion of an inconsistent position that perverts the judicial machinery.'" Id. at 798 (quoting Jackson v. Cnty. of Los Angeles, 70 Cal. Rptr. 2d 96, 103 (Ct. App. 1997)). Here, Mr. Ryan was not successful in his bankruptcy petition, so there is no risk of inconsistent court determinations and therefore no basis to impose the judicial estoppel doctrine in the instant case. Further, after considering all of the evidence in this case, including the types and amounts of money deposited into the subject account and Mr. Ryan's mental illness, the Court finds that this is not one of the "egregious circumstances" warranting the "extraordinary remedy" of judicial estoppel. See Jogani, 45 Cal. Rptr. 3d at 797-98.

The Court recognizes that Judgment Creditor has provided significant evidence establishing that other courts have found Mr. Ryan, and his parents, to have been dishonest in other judicial proceedings. See Request, Exhs. 1, 3-7. While these findings concern the Court,

the Court's focus is on the sufficiency and legitimacy of the current third-party claim of exemption. In evaluating this claim, there is substantial evidence establishing that (1) Mr. Ryan's social security, veterans', and federal retirement benefits were directly deposited into the subject account for many years, (2) with the exception of one deposit in September 2012, all of the money deposited into the account belonged to Mr. Ryan, (3) the money in the account was used for Mr. Ryan's benefit, and (4) the amount of exempt funds deposited into the account greatly exceeds the amount of levied funds taken from the account. Moreover, two of Mr. Ryan's treating psychiatrists have opined that Mr. Ryan's irrational or unreasonable positions are the result of his mental health conditions and symptoms. See Baker Decl. at 2-3; Mot., Exh. 16 at 37-38. Finally, Judgment Creditor has not established the applicability of the judicial estoppel doctrine since Mr. Ryan was not successful in his bankruptcy petition and his mental limitations undermine the appropriateness of the doctrine. Accordingly, the Court finds that the levied funds from U.S. Bank account x4226 are exempt and **RECOMMENDS** that Mr. Ryan's motion be **GRANTED.**

### III. $100.00 Garnishment Fee

Mr. Ryan requests the refund of the $100 garnishment fee imposed on U.S. Bank account x4226. See Mot., Exh. 8 at 64, Exh. 15 at 33; Mykal Ryan Decl. at 2. Mr. Ryan does not cite any specific authority to substantiate his request and does not challenge U.S. Bank's right to charge service fees for garnishment orders. See Mot.; Reply. The Court thus **RECOMMENDS** that Mr. Ryan's request for the refund of the $100 garnishment fee be **DENIED**. See In re Alpha Telcom, Inc., 2009 WL 2828495, at *1 (D.Or. Sept. 1, 2009) (denying garnishee's request for a refund of a bank-imposed fee, imposed after the garnishment of funds in the garnishee's bank account).

**CONCLUSION AND RECOMMENDATION**

Based on the forgoing, the Court **RECOMMENDS** that the District Court enter an Order: (1) approving and adopting this Report and Recommendation, (2) **GRANTING** Mykal Ryan's Motion for Third Party Claim of Exemption, and (3) **DENYING** Mykal Ryan's request for a refund of the $100 garnishment fee.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than January 31, 2017**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than February 14, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated: 1/17/2017

Hon. Barbara L. Major
United States Magistrate Judge